Opinion for the court filed by Circuit Judge O’MALLEY. Concurring opinion filed by Circuit Judge PROST.
O’MALLEY, Circuit Judge.
Marvin M. Brandt and Marvin M. Brandt Revocable Trust (collectively, “Brandt” or “plaintiffs”) appeal from the final decision of the United States Court of Federal Claims dismissing their takings claim for lack of jurisdiction under 28 U.S.C. § 1500. Brandt v. United States, 102 Fed.Cl. 72 (2011). Because we find that § 1500 does not bar Brandt’s complaint, we reverse and remand the case to the Court of Federal Claims for further proceedings consistent with this opinion.
Background
This case involves an alleged taking of Brandt’s property interests in a railroad right-of-way that traverses his property. *911 In 1908, the United States granted the railroad right-of-way at issue to the Laramie, Hahn’s Peak, and Pacific Railroad Company for railroad purposes. In 1976, the government conveyed 83.32 acres of land partially burdened by the railroad right-of-way to Melvin M. Brandt and Lula M. Brandt — the parents of Marvin M. Brandt. The land patent conveyed the property in fee simple and stated that it was subject to the right-of-way. The property was placed into a family trust, which Brandt acquired in 2002.
In 1987, the Wyoming and Colorado Railroad Company, Inc. (“WYCO”) acquired the railroad right-of-way and operated the rail line for a number of years. In May 1996, WYCO filed a Notice of Intent to Abandon Rail Service with the Surface Transportation Board (“STB”). The STB approved abandonment of the rail line in December 2003, and, in January 2004, WYCO notified the STB that it had completed its abandonment of the railroad right-of-way.
A. District Court Litigation
In July 2006, the United States filed suit in the United States District Court for the District of Wyoming seeking declaratory judgment that title to the abandoned right-of-way had vested in the government. Specifically, the United States alleged that, “[ujnder the National Trails System Improvements Act of 1988, 16 U.S.C. § 1248(c), any and all right, title, and interest in rights-of-way of the type described in the Abandoned Railroad Right-of-Way Act of 1922 (43 U.S.C. § 912) are retained by the United States upon a judicial decree of abandonment.” Amended Compl. for Decl. Judgment of Abandonment and Quiet Title, United States v. Wyoming and Colorado Railroad Co., No. 2:06-cv-184 (D.Wyo. Mar. 9, 2007), ECF 105, ¶ 31.
On August 8, 2006, Marvin M. Brandt filed an answer and counterclaims asserting that the court should quiet title in his favor.[1] In a separate counterclaim, Brandt alleged that, to the extent the government acquired some interest in the portion of the land formerly occupied by the railroad easement, that interest would constitute a taking for which just compensation is owed. Recognizing the district court’s jurisdictional limitations, and because the value of the land at issue exceeded $10,000, Brandt requested that the district court transfer his takings counterclaim to the Court of Federal Claims. By agreement of the parties, the district court bifurcated the case, staying the takings counterclaim while it resolved the quiet title claims.
In April 2008, after the parties filed cross-motions for summary judgment, the district court granted summary judgment in favor of the government, finding that it retained a reversionary interest in the railroad right-of-way. United States v. Brandt, No. 06-cv-184, 2008 U.S. Dist. LEXIS 111935, *26-27 (D.Wyo. Apr. 8, 2008). In that decision, the court noted that, if Brandt decided to pursue a takings claim in excess of $10,000, the Court of Federal Claims would have exclusive jurisdiction over that claim and thus “any tak *912 ings issues brought before this Court would be dismissed for want of subject matter jurisdiction.” Id. at *27.
Brandt subsequently moved to transfer his takings claim to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. In response, the government asked the court to deny the motion to transfer and dismiss the takings counterclaim for lack of subject matter jurisdiction. In its motion to dismiss, the government indicated that “[dismissal of the claim upon entry of this Court’s judgment will appropriately require the Trust to file a new, current pleading in the Court of Federal Claims which recognizes the Judgment entered by this Court. It is, after all, this Court’s Judgment which allegedly forms the basis of the Trust’s taking claim.” United States’ Motion to Dismiss Third Counterclaim, United States v. Wyoming and Colorado R.R. Co., No. 2:06-cv-184 (D.Wyo. Apr. 18, 2008), ECF 173, ¶ 10.
Almost one year later, in March 2009, the district court entered judgment in favor of the United States and against Brandt. In relevant part, the court declared and decreed that: (1) WYCO abandoned the railroad right-of-way “for all purposes including the National Trails System Improvements Act of 1988, 16 U.S.C. § 1248(c), and the Abandoned Railroad Right-of-Way Act of 1922 (43 U.S.C. § 912);” (2) the government retained a re-versionary interest in the railroad right-of-way; (3) “as a result of the abandonment by WYCO, title to the railroad right-of-way is hereby vested and quieted in the United States, and the United States is entitled to the quiet and peaceful use and possession of the railroad right-of-way;” and (4) the interest vested in the government includes the right to construct and operate a recreational trail. Judgment, United States v. Wyoming and Colorado R.R. Co., No. 2:06-cv-184 (D.Wyo. Mar. 2, 2009), ECF 200, ¶¶ 3-6. Two days later, the court denied Brandt’s motion to transfer and granted the government’s motion to dismiss Brandt’s takings counterclaim without prejudice.
On April 29, 2009, Brandt appealed the district court’s judgment quieting title in favor of the government to the Tenth Circuit Court of Appeals. In a decision dated September 11, 2012, the Tenth Circuit affirmed, concluding that the “district court correctly held that the interest in the abandoned railroad right-of-way belongs to the United States.” United States v. Brandt, No. 09-8047, 496 Fed.Appx. 822, 823, 2012 WL 3935613, at *1 (10th Cir.2012).[2]
B. Court of Federal Claims Proceedings
On April 28, 2009 — one day before he appealed the district court’s decisions to the Tenth Circuit — Brandt filed the instant takings claim in the Court of Federal Claims. In the complaint, Brandt alleged that the district court’s decree of abandonment with respect to the railroad easement *913 and decision quieting title in favor of the government effectuated a taking in violation of the Fifth Amendment. Specifically, Brandt alleged that, but for the court’s application of 16 U.S.C. § 1248(c), the easement would have terminated upon abandonment and no longer would have burdened his property. Brandt argued that the court had jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), because: (1) the case is a suit against the government seeking just compensation; and (2) as of the date of filing, “Plaintiffs have no claims for or in respect to this claim pending in any other court.” Complaint, Brandt v. United States, No. 09-cv-265 (Fed.Cl. Apr. 28, 2009), ECF 1, ¶2.
In response, the government moved to either dismiss Brandt’s complaint for failure to state a claim or stay proceedings pending resolution of Brandt’s appeal to the Tenth Circuit. In a decision dated October 27, 2009, the Court of Federal Claims chose to stay proceedings. In June 2011, following the Supreme Court’s decision in United States v. Tohono O’odham Nation (“Tohono”), — U.S. -, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011), the government moved to lift the stay and dismiss Brandt’s takings claim for lack of subject matter jurisdiction under 28 U.S.C. § 1500. In Tohono, the Supreme Court clarified that two suits “are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.” Id. at 1731. Given this language, the government argued that, because Brandt’s takings claim in the Court of Federal Claims and his counterclaim in the district court were based on substantially the same operative facts, the court lacked jurisdiction under § 1500.
In the November 30, 2011 decision at issue on appeal, the Court of Federal Claims granted the government’s motion and dismissed Brandt’s takings claim on grounds that § 1500 precluded jurisdiction. Specifically, the court found that: (1) Brandt’s case was “pending” within the meaning of § 1500 when he filed in the Court of Federal Claims because the time for filing a notice of appeal to the Tenth Circuit had not yet expired; and (2) Brandt’s takings claim filed in the Court of Federal Claims was “for or in respect to” the claims filed in Wyoming district court because they shared “substantially the same operative facts.” Brandt, 102 Fed.Cl. at 76. Brandt timely appealed those issues to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
Discussion
We review the Court of Federal Claims’ decision to dismiss a case for lack of subject matter jurisdiction de novo. Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed.Cir.2011). It is well-established that the plaintiff bears the burden of establishing the court’s jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed.Cir.2002).
While the Tucker Act, 28 U.S.C. § 1491(a)(1), grants the Court of Federal Claims jurisdiction over “any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort,” § 1500 divests the court of jurisdiction when a related action is pending in another court. Specifically, § 1500 provides, in relevant part, that the Court of Federal Claims “shall not have jurisdiction of any claim for or in respect to which *914 the plaintiff or his assignee has pending in any other court any suit or process against the United States....” 28 U.S.C. § 1500. As the Supreme Court recently explained, § 1500 “effects a significant jurisdictional limitation” and was designed to “save the Government from burdens of redundant litigation.” Tohono, 131 S.Ct. at 1729-30. Where § 1500 applies, the Court of Federal Claims lacks subject matter jurisdiction and must dismiss the complaint. Id. at 1727.
To determine whether § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed “suit or process” pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are “for or in respect to” the same claim(s) asserted in the later-filed Court of Federal Claims action. Trusted Integration, 659 F.3d at 1163-64 (citing Tohono, 131 S.Ct. at 1727). If the answer to either of these questions is negative, then the Court of Federal Claims retains jurisdiction. Id. As to the first inquiry, it is undisputed that a counterclaim—such as the quiet title counterclaim Brandt asserted in the district court action—is a “suit or process” within the meaning of § 1500. See Frantz Equip. Co. v. United States, 120 Ct.Cl. 312, 98 F.Supp. 579, 580 (1951). As to the second, two suits are “for or in respect to” the same claim “if they are based on substantially the same operative facts, regardless of the relief sought.” Tohono, 131 S.Ct. at 1731. Importantly, the legal theories underlying the asserted claims are irrelevant to this inquiry. Trusted Integration, 659 F.3d at 1164 (citing Keene Corp. v. United States, 508 U.S. 200, 212, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (“That the two actions were based on different legal theories [does] not matter.”)).
Brandt argues that the Court of Federal Claims erred in dismissing his takings complaint for two separate and independently sufficient reasons. First, Brandt argues that, at the time plaintiffs filed the Court of Federal Claims complaint, the district court counterclaims were no longer “pending” within the meaning of § 1500. Second, Brandt contends that the district court counterclaims and later-filed takings action do not share the same operative facts because the takings claim asserted here arises from the district court’s March 2, 2009 judgment quieting title in the government.[3] According to Brandt, either of these factors, standing alone, is sufficient to show that jurisdiction was proper in the Court of Federal Claims. Because we agree with Brandt on the first issue, we need not address the second. For the reasons explained below, we conclude that the Court of Federal Claims erred in dismissing Brandt’s takings claim for lack of jurisdiction under § 1500.
*915 On appeal, the parties dispute whether the district court case was “pending” when plaintiffs filed their takings complaint in the Court of Federal Claims. Whether an earlier-filed “suit or process” is “pending” for § 1500 purposes is determined at the time the complaint is filed with the Court of Federal Claims. See Keene, 508 U.S. at 207, 113 S.Ct. 2035 (noting that jurisdiction “depends upon the state of things at the time of the action brought”) (citation omitted).
The relevant question on appeal is whether a claim or counterclaim is “pending” under § 1500 after judgment is entered but before the time for filing an appeal has expired. We have not addressed this question previously, and there is a split of authority on it in the Court of Federal Claims. Compare Vero Technical Support, Inc. v. United States, 94 Fed.Cl. 784, 795 (2010) (“The right to an appeal, if still available and not renounced by plaintiff, is part of an ongoing suit or process initiated by plaintiff in the District Court, for which reason, plaintiffs claim is still ‘pending[1] for purposes of a section 1500 analysis.”); and Jachetta v. United States, 94 Fed.Cl. 277, 283 (2010) (holding that “a suit is pending for purposes of section 1500 until its final adjudication on appeal or until the time for appeal has run”); with Young v. United States, 60 Fed.Cl. 418, 425 (2004) (“The Court concludes that, once a claim is dismissed or denied, it is no longer pending in another court, for purposes of Section 1500, until a motion for reconsideration or notice of appeal is filed.”); and Bolduc v. United States, 72 Fed.Cl. 187, 196 (2006) (“Mr. Bolduc could have filed a claim here in the weeks between July 8, 2003 and August 1, 2003— the time between the entry of judgment in the district court and the plaintiffs filing of the notice of appeal to the First Circuit”).
Brandt argues that, at the time plaintiffs filed their complaint in the Court of Federal Claims, they had no suit or process against the United States pending in any court because: (1) on March 2, 2009, the Wyoming district court entered judgment in favor of the United States and against Brandt on the quiet title issue; (2) the district court dismissed Brandt’s takings counterclaim on March 4, 2009 for lack of jurisdiction; (3) Brandt filed the instant takings action on April 28, 2009; and (4) Brandt did not appeal any aspect of the district court’s decision until April 29, 2009.[4] According to Brandt, “because all litigation in the District Court had concluded at the time the Brandts filed their Complaint in the instant case, the Brandts had no ‘suit or process against the United States’ pending in any court.” Appellants’ Br. 18.
In support of his position, Brandt relies primarily on two cases: this court’s prior decision in Boston Five Cents Savings Bank, FSB v. United States (“Boston Bank”), 864 F.2d 137 (Fed.Cir.1988), and the Court of Federal Claims’ decision in Young, which cites to Boston Bank. In Boston Bank, the plaintiff filed suit in district court seeking a declaratory judgment. Although the district court granted summary judgment against the plaintiff, the First Circuit vacated that judgment on appeal and remanded the case for further proceedings. Id. at 138. On remand, the plaintiff moved to amend the complaint to *916 add a claim for money damages. That motion was denied “on the basis of inexcusable delay.” Id. The plaintiff subsequently filed suit in the Claims Court of seeking monetary damages. Although the Claims Court dismissed the plaintiffs complaint for lack of jurisdiction under § 1500, this court reversed, finding that, “at the time the Claims Court action was filed, no money claim was pending in the district court within the purview of section 1500.” Id. at 139. In reaching this conclusion, we rejected the government’s argument that, “until the damage claim raised in the district court is resolved on appeal, that claim is pending.” Id. In other words, even though the plaintiff might have appealed the denial of its motion to amend after judgment was entered in the district court, the possibility of appeal did not make that claim “pending” for § 1500 purposes.
In Young, the Court of Federal Claims cited Boston Bank to support its conclusion that it “can exercise jurisdiction over claims that have been dismissed by another court and not yet appealed.” Young, 60 Fed.Cl. at 424 (“Although the denial of the motion to add the money damage claim [in Boston Bank] could have been subsequently appealed once a judgment was entered in the district court (the trial had at that time not yet started), this prospective event did not make that claim ‘pending’ for purposes of Section 1500.”). The court also cited its own earlier decisions for the proposition that, “if a claim filed here had already been dismissed or rejected by another court, it is the actual filing of a notice of appeal of that other court’s decision that would make the claim ‘pending,’ and not the mere fact that the time to appeal it has yet to run.” Id. (citations omitted). Given this authority, the court in Young concluded that, “between the time of dismissal or judgment and the filing of a notice of appeal, there was no legal action pending for Section 1500 purposes.” Id. at 425.
The government argues that Brandt’s reliance on Boston Bank is misplaced because there, the district court denied the plaintiffs motion to amend and thus the claim for money damages was never added to the plaintiffs district court complaint. Here, in contrast, Brandt’s quiet title and takings counterclaims were added to the district court litigation when he asserted them in his answer. The government further argues that, unlike the situation here, the Claims Court complaint in Boston Bank was not filed during the time frame between the entry of judgment and the notice of appeal. While the government is correct that the precise factual scenario in Boston Bank is not identical to that presented here, it nevertheless supports the idea that a dismissed or denied claim is no longer pending for § 1500 purposes until a notice of appeal or motion for reconsideration is filed. See Young, 60 Fed.Cl. at 425.
In the decision currently on appeal, the Court of Federal Claims relied on Vero Technical and Jachetta in concluding that a suit is pending for § 1500 purposes “until it is finally adjudicated on appeal or until the time to file an appeal has expired.” Brandt, 102 Fed.Cl. at 79 (citing Jachetta, 94 Fed.Cl. at 283; Vero Technical, 94 Fed.Cl. at 795). Those cases— neither of which is binding on this court— are not particularly helpful here because, as discussed below, they relied primarily on the Supreme Court’s interpretation of the word “pending” in Carey v. Saffold, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002), without recognizing the specialized nature of the statute at issue in that case. In addition, Vero Technical and Jachetta are factually distinguishable be *917 cause: (1) in Jachetta, the plaintiff had a Rule 60(a) motion to correct the judgment pending in the district court at the time he filed suit in the Court of Federal Claims[5]; and (2) both cases emphasized that the plaintiff chose to file first in the district court, whereas in this case, it was the government that initiated proceedings by filing its declaratory judgment action in district court. See Jachetta, 94 Fed.Cl. at 283 (“By commencing a suit in the district court, plaintiff engaged a process that carries with it a right to an appeal. So long as that right remains exercisable, the process of which it is a part is properly regarded as pending.”) (internal citation omitted); Vero Technical, 94 Fed.Cl. at 795 (“The right to an appeal, if still available and not renounced by plaintiff, is part of an ongoing suit or process initiated by plaintiff in the District Court, for which reason, plaintiffs claim is still ‘pending’ for purposes of a section 1500 analysis.”).
In Carey, which the government cites on appeal, the Supreme Court interpreted the word “pending” in the context of the Anti-terrorism and Effective Death Penalty Act of 1996 (“AEDPA”). AEDPA “requires a state prisoner seeking a federal habeas corpus remedy to file his federal petition within one year after his state conviction has become ‘final.’ ” Carey, 536 U.S. at 216, 122 S.Ct. 2134 (citing 28 U.S.C. § 2244(d)(1)(A)). The statute also provides that the one year period “does not include the time during which an application for state collateral review is ‘pending’ in the state courts.” Id. (citing 28 U.S.C. § 2244(d)(2)). At the outset of its analysis, the Supreme Court noted that the dictionary defines “pending” as “in continuance” or “not yet decided.” Id. at 219, 122 S.Ct. 2134. Applying those definitions in the § 2244(d) context, the Court concluded that an application for state post-conviction review is “pending” “until the application has achieved final resolution through the State’s post-conviction procedures.” Id. at 220, 122 S.Ct. 2134. In reaching this conclusion, the Court emphasized that a “federal habeas petitioner must exhaust state remedies before he can obtain federal ha-beas relief,” which requires the petitioner to “invoke one complete round of the State’s established appellate review process.” Id. (citation omitted). Given these circumstances, the Court concluded that the word “pending,” in the context of AEDPA, included the time between a lower state court’s decision and the filing of a notice of appeal to a higher state court.
In Jachetta, the Court of Federal Claims concluded that the Carey “analysis fits the present case” because, “[b]y commencing a suit in the district court, plaintiff engaged a process that carries with it a right to an appeal.” Jachetta, 94 Fed.Cl. at 283. Although the court generally acknowledged the factual differences in Carey, it nonetheless adopted the definition of “pending” set forth therein without any explanation as to why that definition would apply outside of the AEDPA context, and concluded that “a suit is pending for purposes of section 1500 until its final adjudication on appeal or until the time for appeal has *918 run.” Jachetta, 94 Fed.Cl. at 283. Likewise, in Vero Technical, the court agreed with the analysis set forth in Jachetta and concluded that a case is still “pending” in the district court if the right to appeal is available and “not renounced by plaintiff.” Vero Technical, 94 Fed.Cl. at 795.
We conclude that the government and the Court of Federal Claims’ reliance on Carey in the § 1500 context is misplaced. While AEDPA requires exhaustion of state remedies prior to filing for federal habeas relief, there is no similar requirement in § 1500. Indeed, as Brandt points out, application of Carey's exhaustion requirement in the § 1500 context would mean that a litigant must seek and litigate an appeal prior to filing suit in the Court of Federal Claims. There is no such requirement in the statute and we decline to impose one. Because AEDPA is a specialized statute dealing with a narrow area of the law, we conclude that it is inapplicable here.[6]
The text of § 1500 refers to a claim “which the plaintiff ... has pending in any other court.” 28 U.S.C. § 1500. Black’s Law Dictionary defines “pending” as “[r]e-maining undecided; awaiting decision <a pending case>.” Black’s Law Dictionary 1248 (9th ed. 2009). Although the parties agree that a claim is pending when a notice of appeal is filed and docketed, they disagree as to whether a dismissed claim is a “pending” claim under the statute. The government argues that it is, and that a suit is “pending” in another court for purposes of § 1500 until it is no longer appeal-able. We disagree.
From a statutory interpretation standpoint, the problem with reading “pending” in § 1500 to include the time after judgment is entered but before an appeal is filed is that it reads the words “in any other court” out of the statute. If, as the government submits, a case is pending during that interim period, in which court is it pending? The government fails to acknowledge that: (1) when a district court enters judgment and that judgment becomes final, the case is closed on the court’s docket; and (2) if a party files an appeal, a new case is opened on the Court of Appeal’s docket. And, as the court in Young recognized, it is the actual filing of the notice of appeal that makes the claim “pending”—“not the mere fact that the time to appeal it has yet to run.” 60 *919 Fed.Cl. at 424. In other words, despite the government’s assertions to the contrary, there is a period of time when a case is not, as the statute requires, “pending in any other court.”[7]
The government further argues that “a strict construction of the term ‘pending’ is required because Section 1500 is a limitation on the congressional waiver of the United States’ sovereign immunity.” Ap-pellee’s Br. 23. Because the plain language of the statute reveals that the case must actually be pending in another court for § 1500 to apply, resort to sovereign immunity principles is neither necessary nor proper. See Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 590, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008) (“There is no need for us to resort to the sovereign immunity canon because there is no ambiguity left for us to construe.”). Accordingly, the government’s reliance on the doctrine of sovereign immunity is misplaced.
Finally, the government submits that interpreting the term “pending” “to include the period before all appeal rights have expired is consistent with Section 1500’s purpose of protecting the United States against redundant litigation.” Appellee’s Br. 22-23. According to the government, Brandt should have affirmatively waived his right to appeal the district court’s decision to signify that the case was officially terminated. The government cites no authority requiring a litigant to forgo its appellate rights in these circumstances, and we have found none. Although the government is correct that § 1500 “was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories” and to prevent the government from having to defend against duplicative lawsuits, Trusted Integration, 659 F.3d at 1163, here, it was the government — not Brandt — that affirmatively chose to file suit in district court. And, as Brandt points out, once the government filed suit, he was compelled to file counterclaims relating to the abandoned railroad easement or risk waiving his right to do so. See Fed.R.Civ.P. 13(a)(1)(A) (“A pleading must state as a counterclaim any claim that — at the time of its service — the pleader has against an opposing party if the claim: arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim”).[8]
Given the statutory text, we conclude that, once a claim is dismissed or denied, it *920 is no longer “pending” for § 1500 purposes until a motion for reconsideration or notice of appeal is filed. Here, the Wyoming district court entered judgment in favor of the government on March 2, 2009, and dismissed Brandt’s takings counterclaim two days later. In its March 4, 2009 order, the court stated that, “[i]n light of the dismissal of the final claim before this Court, this case is now fully adjudicated before this Court and no matters remain outstanding.” Order Granting Plaintiffs Motion to Dismiss the Third Counterclaim, United States v. Wyoming and Colorado R.R. Co., No. 2:06-cv-184 (D.Wyo. Mar. 4, 2009), ECF 202, at 5. It is undisputed that Brandt filed the takings complaint in the Court of Federal Claims on April 28, 2009, and his Notice of Appeal to the Tenth Circuit on April 29, 2009. Accordingly, at the time Brandt filed the instant case, he had no “suit or process against the United States” pending in any other court. Because Brandt did not have claims “pending” for purposes of § 1500 when he filed his takings complaint, we find that the Court of Federal Claims’ dismissal for lack of jurisdiction was inappropriate. In light of this conclusion, we need not and do not reach Brandt’s alternative argument that the district court counterclaims and his takings complaint do not share the same operative facts.[9]
Conclusion
For the foregoing reasons, the final judgment of the Court of Federal Claims is reversed and remanded for further proceedings consistent with this opinion.
REVERSE AND REMAND

. On October 1, 2007, Marvin M. Brandt Revocable Trust and Marvin M. Brandt, Trustee filed a First Amended Answer and Counterclaims, substituting themselves as the real parties in interest. First Amended Answer and Counterclaims, United States v. Wyoming and Colorado Railroad Co., No. 2:06-cv-184 (D.Wyo. Oct. 1, 2007), ECF 137-2. The substance of the answer and counterclaims remained unchanged.

. In reaching this conclusion, the Tenth Circuit recognized that "[m]uch of the trust’s argument is foreclosed by circuit precedent which we are bound to follow.” Brandt, 496 Fed.Appx. at 823, 2012 WL 3935613, at *1 (citation omitted). Specifically, the court acknowledged that, although “the Seventh Circuit, the Federal Circuit and the Court of Federal Claims have concluded that the United States did not retain any reversionary interest in these railroad rights-of-way, we are bound by our precedent.” Id. at 823, 2012 WL 3935613, at *1 (citing Samuel C. Johnson 1988 Tr. v. Bayfield County, 649 F.3d 799, 803-04 (7th Cir.2011); Hash v. United States, 403 F.3d 1308, 1317 (Fed.Cir.2005); Beres v. United States, 64 Fed.Cl. 403, 427-28 (2005)).

. As to the second issue—whether the claims asserted involve substantially the same operative facts—the parties disagree as to which claims the court should compare. Specifically, they disagree on the question of whether the § 1500 analysis applies to claims over which the district court concludes that it lacks jurisdiction. According to Brandt, because the district court lacked jurisdiction over his takings counterclaim, that claim is irrelevant for § 1500 purposes, and we should compare his district court quiet title counterclaim to the Court of Federal Claims takings complaint. In contrast, the government maintains that, after Tohono, the question of "whether the district court had jurisdiction to provide the relief that Brandt sought in his counterclaim makes no difference.” Appel-lee’s Br. 43. Because we agree with Brandt that his earlier-filed district court counterclaims were not "pending” at the time he filed this action, we need not resolve this complex question.

. Importantly, Brandt did not appeal the district court's conclusion that it lacked jurisdiction over his takings claim; he only appealed "the district court's judgment quieting title in the United States.” Brandt, 496 Fed.Appx. at 823, 2012 WL 3935613, at *1.

. Indeed, the Jachetta court pointed to the plaintiff's Rule 60(a) motion as an alternative ground supporting its decision to dismiss the plaintiff's complaint under § 1500: "even if the facts of Carey are found to be sufficiently distinguishable to limit the applicability of the Court’s analysis therein, we cannot accept plaintiff's construction of section 1500.... Plaintiff’s Rule 60(a) motion was therefore a pending process within the meaning of section 1500 and jurisdiction is consequently lacking on that ground.” Jachetta, 94 Fed.Cl. at 283-84.

. The government also cites Eikenbeny v. Callahan, 653 F.2d 632 (D.C.Cir.1981) and Wink-ler v. Andrus, 614 F.2d 707 (10th Cir.1980)— both of which are readily distinguishable. For example, in Eikenbeny, the appellee argued that a case could only be "pending” when it was being heard in district court. 653 F.2d at 635. The court rejected this argument, finding that the "ordinary meaning of 'pending' includes cases pending on appeal” and that "certainly a statute which specifies that it shall apply to any pending civil action must apply to a case pending on direct appeal from the District Court.” Id. There, however, there was no question that the appeal was noticed and active when described as "pending.” In Winkler, the Tenth Circuit indicated that: (1) "one who deals with property while it is in litigation does so at his own peril”; and (2) "[w]e have considered whether the presence of administrative proceedings is notice that a lawsuit is pending, and the majority rule is that a lawsuit is determined pending throughout the time in which appellate review of the original judgment may be taken.” 614 F.2d at 714. As Brandt points out, the cited language is largely dicta and the narrow issue in Winkler was whether constructive notice of administrative proceedings would destroy bona fide purchaser status under the Mineral Leasing Act. Importantly, neither case addressed the central issue here: whether a dismissed claim is a "pending” claim within the meaning of § 1500 before a notice of appeal is filed.

. The government also argues that, if we find that Brandt’s counterclaims were not "pending” at the time he filed suit in the Court of Federal Claims, the validity of the order-of-filing rule articulated in Tecon Eng'rs, Inc. v. United States, 343 F.2d 943 (Ct.Cl.1965) would be at issue. In Tecon, the court held that a later-filed action in another court does not divest the Court of Federal Claims of jurisdiction. Id. at 949. Because Brandt filed his takings complaint in the Court of Federal Claims before he filed his appeal to the Tenth Circuit, the order-of-filing rule set forth in Tecon, which was not at issue in Tohono, and which remains the law of this circuit, is satisfied. See Hardwick Bros. Co. II v. United States, 72 F.3d 883, 886 (Fed.Cir.1995) (explaining that Tecon’s order-of-filing rule "remains good law and binding on this court”); see also Tohono, 131 S.Ct. at 1729-30 ("The Tecon holding is not presented in this case because the CFC action here was filed after the District Court suit.”).

. The government's argument that Brandt should have affirmatively waived a right to appeal from the quiet title determination is particularly strange given the Tenth Circuit's concession that other courts to have considered the government’s retention of rights in these abandoned railroad rights-of-way, including this one, would have reversed the district court’s judgment.

. We also do not reach a related and complicated question which the parties debate at length in their briefs — whether “a § 1500 analysis is inapplicable to a claim over which the district court concludes it lacks jurisdiction.” E. Shawnee Tribe of Okla. v. United States, 582 F.3d 1306, 1312 n. 4 (Fed.Cir.2009) (vacated on other grounds by Tohono, 131 S.Ct. 1723) (citing Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed.Cir.1994)) (en banc) (finding that where district court determined it lacked jurisdiction over a claim, that claim was "without legal significance” in a § 1500 analysis); but see Frantz, 98 F.Supp. at 580 (finding applicability of § 1500 "is not conditioned upon the question of whether the district court had jurisdiction of the claim asserted by the plaintiff herein.”).

. The Supreme Court has never addressed our holding in Tecon. See Tohono, 131 S.Ct. at 1729 ("The Tecon holding is not presented in this case....”); Keene Corp. v. United States, 508 U.S. 200, 222 n. 4, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (“We do not decide whether [§ 1500] also continues to bar a plaintiff from prosecuting a claim....”).