# United States Court of Appeals for the Federal Circuit

---

**RESOURCE INVESTMENTS, INC., LAND RECOVERY, INC.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5069

---

Appeal from the United States Court of Federal Claims in No. 1:98-cv-00419-LB, Judge Lawrence J. Block.

---

Decided: May 12, 2015

---

MARK S. PARRIS, Orrick, Herrington & Sutcliffe LLP, Seattle, WA, argued for plaintiffs-appellants. Also represented by DAVID S. KEENAN, DANIEL D. SYRDAL; MARC SHAPIRO, New York, NY.

LANE N. MCFADDEN, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by SAM HIRSCH.

————————————

Before PROST, *Chief Judge,* DYK, and O'MALLEY, *Circuit Judges.*

DYK, *Circuit Judge.*

Resource Investments, Inc. and Land Recovery, Inc. (collectively, "Resource Investments") appeal the Court of Federal Claims' ("Claims Court") dismissal of their Fifth Amendment takings claim pursuant to 28 U.S.C. § 1500. We affirm.

BACKGROUND

This case requires that we again consider § 1500, which limits the Claims Court's jurisdiction when at the time of the Claims Court filing there was a pending action against the United States in another court involving the same subject matter. Section 1500 provides: "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500. The question here is whether Resource Investments' takings claim in the Claims Court based on the denial of a federal permit under Section 404 of the Clean Water Act ("CWA permit"), 33 U.S.C. § 1344, was barred by an earlier district court suit under the Administrative Procedure Act ("APA") challenging the permit denial.

In 1987, Resource Investments purchased a 320-acre property in the State of Washington which it sought to use as a landfill. Beginning in 1989, Resource Investments applied for various state permits to construct the landfill. Because the proposed landfill project involved the fill of wetland areas, Resource Investments filed an application on August 8, 1990, for a CWA permit from the United States Army Corps of Engineers ("Corps"). *See* 33

U.S.C. § 1344. The requisite state permits were ultimately issued in 1996 on the condition that Resource Investments obtain, *inter alia*, a federal CWA permit from the Corps. On March 4, 1994, as part of the CWA permitting process, the Corps determined that it would require a federal Environmental Impact Statement ("EIS") for the proposed landfill site. After the Corps' draft EIS preliminarily concluded that Resource Investments had not fully demonstrated that there were no practicable alternatives to the proposed landfill project (as required by 40 C.F.R. § 230.10(a)), Resource Investments requested that the Corps terminate the federal EIS process, which the Corps did on June 7, 1996. The Corps formally denied Resource Investments' CWA permit on September 30, 1996.

On October 31, 1996, Resource Investments filed suit in the United States District Court for the Western District of Washington under the APA, challenging the denial of the CWA permit. Resource Investments alleged, *inter alia*, that the Corps' permitting process and ultimate denial of the permit violated the Clean Water Act and was arbitrary and capricious under the APA, 5 U.S.C. § 500 *et seq.* ("count IV"). Count IV alleged "a cost to [Resource Investments] of several millions of dollars," J.A. 474, and that Resource Investments stood to "lose the large sums already invested in the project, as well as the economic value of its investment in the project site," J.A. 483.

The district court upheld the Corps' denial of the permit under the APA, but the Ninth Circuit reversed, finding that the Corps lacked authority to require a CWA permit because, under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6941–6949a, the regulation of municipal solid waste in landfills constructed on wetlands areas lies solely with the Environmental Protection Agency ("EPA") or states (such as Washington) with solid waste permit programs approved by the EPA. *See Res. Invs., Inc. v. U.S. Army Corps of Eng'rs*, 151 F.3d 1162,

1167–69 (9th Cir. 1998). Under the Ninth Circuit's holding, no CWA permit was required, and Resource Investments began construction of its landfill in October 1998. The landfill became operational in 1999.

On May 4, 1998, while the Ninth Circuit appeal was pending, Resource Investments filed a complaint in the Claims Court alleging that the Corps' denial of the CWA permit was a taking in violation of the Fifth Amendment.[1] The Claims Court complaint alleged that "[i]n denying the Section 404 permit, the Corps has deprived plaintiffs of their valuable property interests in the Site without just compensation." J.A. 86. And the prayer for relief sought judgment against the United States "for just compensation and damages equal to the value of the Site but for the Corps' Section 404 Permit denial." J.A. 91. On October 13, 2005, several years after the Ninth Circuit's decision in the appeal of the district court action, Resource Investments filed an amended complaint in the Claims Court action alleging that the Corps' denial of the permit was a temporary taking under various legal theories.

While the Claims Court action was pending, the Supreme Court decided *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723 (2011), holding that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in the [Claims Court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731. On June 10, 2011, after the Claims Court action had been pending for several years, the United States, in light of *Tohono*, filed a motion

---

[1]    Interestingly, Resource Investments did not allege that the taking resulted from the assertion that a permit was required even though no permit was, in fact, necessary.

to dismiss the action for lack of subject matter jurisdiction.

The Claims Court granted the government's motion to dismiss, finding that count IV of the district court action and the Claims Court action shared substantially the same operative facts, in particular because the denial of the CWA permit was central to both suits.[2]  The Claims Court found that "the facts underlying the Corps' *decision to deny the permit* were material to plaintiffs' claim that the Corps violated applicable regulations because the denial of the permit was the culmination of a series of allegedly improper acts taken by the Corps."  J.A. 34.  The Claims Court also denied Resource Investments' motion for reconsideration, rejecting Resource Investments' argument that the denial of the permit was merely the "impetus" for bringing the two lawsuits, rather than an operative fact, because "the denial of the permit was in fact not only operative but also dispositive—as the court pointed out, but for the denial of the permit, plaintiffs would not have been able to argue these claims."  J.A. 44–45.

Resource Investments appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).  We review the Claims Court's dismissal for lack of subject matter jurisdiction de

---

[2]    The Claims Court also found that count III of the district court suit, which alleged violations of the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, shared substantially the same operative facts as the Claims Court action.  Resource Investments argues that because count III was not appealed to the Ninth Circuit, it was not pending when they filed the Claims Court action.  Because we find that count IV of the district court action arises from substantially the same operative facts as the Claims Court action, we need not address count III.

novo. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

DISCUSSION

I

As we held in *Brandt*, "[t]o determine whether § 1500 applies, a court must make two inquiries: (1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." 710 F.3d at 1374. Resource Investments does not dispute that the district court action constitutes an earlier-filed suit for purposes of the first § 1500 inquiry.

In undertaking the second inquiry, we compare count IV of the district court action with the Claims Court action to determine whether they are "for or in respect to" each other. 28 U.S.C. § 1500. The Supreme Court held in *Keene Corp. v. United States*, 508 U.S. 200 (1993), that the relevant comparison under § 1500 analyzes whether the two suits were "based on substantially the same operative facts." *Id.* at 212. In *Tohono*, the Court addressed an issue expressly left unresolved by *Keene*: whether the § 1500 bar applied to two actions based on the same operative facts that sought completely different relief. *Tohono*, 131 S. Ct. at 1727–28. The Court held that the § 1500 bar still applied in that scenario: "Two suits are for or in respect to the same claim, precluding jurisdiction in the [Claims Court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *Id.* at 1731. Here, the Claims Court held that the same operative facts test was satisfied because both suits were based on the denial of the CWA permit and the economic injury to Resource Investments that the permit denial allegedly caused.

Resource Investments first argues that the denial of the permit was not an "operative fact" in the Claims Court action, but rather merely a "background fact." In support of this argument, Resource Investments relies on language in *Central Pines Land Co. v. United States*, 697 F.3d 1360 (Fed. Cir. 2012), suggesting that overlap in background facts does not require dismissal under § 1500. *Id.* at 1365. But as the Claims Court found, the denial of the permit was not merely a background fact. The basis for each of the actions was, in significant part, the Corps' denial of the permit. The allegations that the Corps denied the permit, and the alleged economic loss attributable thereto, were central to both count IV of the district court action and the Claims Court action. The Claims Court complaint alleged:

> The Section 404 Permit denial furthers no legitimate government interest; it wholly frustrates plaintiffs' investment backed expectations, denies all practical, beneficial and economic use of the Site, and wholly destroys the economic value of plaintiffs' property rights in the Site. Accordingly, the action of the [Corps] . . . constitutes a taking of plaintiffs' property . . . .

J.A. 71. The Claims Court action's prayer for relief specifically sought damages "equal to the value of the Site but for *the Corps' Section 404 permit denial*." J.A. 91 (emphasis added). Similarly, count IV of the district court action, challenging the Corps' conduct in denying the permit application, was clearly based on the denial of the permit. Count IV alleged that "[t]he Corps' decision to deny the permit application was the product of its systematic bias, prejudgment and bad faith in reviewing the permit application," and complained "of the Corps' misconduct in reviewing the permit application." J.A. 473. Count IV further alleged that the denial of the permit "must be reversed and remanded with instructions that defendants

reconsider the permit application in good faith under the proper standards as ordered by the Court." J.A. 486. And the prayer for relief in the district court action "request[ed] a determination that the Corps' decision denying the permit was unlawful, arbitrary and capricious because it was the product of systematic bias, prejudgment and bad faith." Complaint for Judicial Review of Administrative Action at 103, *Res. Invs., Inc. v. U.S. Army Corps of Eng'rs*, No. C96-5920 (W.D. Wash. Oct. 30, 1996).

Resource Investments argues that even if the permit denial and economic injury are operative facts common to the two actions, additional—and different—operative facts are necessary to establish each claim. For example, Resource Investments points to the character of the government action and investment-backed expectations in the landfill site as operative facts in the Claims Court action that were irrelevant to the district court action.

To determine whether the overlap as to the permit denial and economic loss is sufficient we apply the res judicata test approved by *Tohono*. In determining whether two suits were "based on substantially the same operative facts," 131 S. Ct. at 1731, the Supreme Court analogized § 1500 to res judicata (or claim preclusion), explaining that "the principles of preclusion law [are] embodied in" § 1500. *Id.* at 1730; *see also Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1164 (Fed. Cir. 2011). Thus, the Court referenced "[t]he now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action," which "depends on factual overlap, barring 'claims arising from the same transaction.'" *Tohono*, 131 S. Ct. at 1730 (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 n.22 (1982)). The Court explained that although "[t]he transaction test is . . . much younger than the rule embodied in § 1500, . . . even in the 19th century it was not uncommon to identify a claim for preclusion purposes

based on facts rather than relief." *Id.* (citing J. Wells, *Res Adjudicata and Stare Decisis* § 241, p. 208 (1878); 2 H. Black, Law of Judgments § 726, p. 866 (1891)).

Under *Tohono*, the question is whether the second Claims Court takings suit would have been barred by res judicata if it had been brought in a district court. Although there is an exception to res judicata where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts," Restatement (2d) of Judgments § 26(1)(c), that exception does not apply to § 1500 in light of *Tohono*'s holding that the statute bars suit on the same claim regardless of the relief sought. *See Tohono*, 131 S. Ct. at 1731; *see also id.* at 1737–38 (Sotomayor, J., concurring).

In light of *Tohono* and *Trusted Integration*, the relevant res judicata inquiry under § 1500 looks to res judicata principles as of 1868, when the predecessor to § 1500[3] was first enacted. *See* Act of June 25, 1868, ch. 71, § 8, 15 Stat. 77; *see also Keene*, 508 U.S. at 206–07. In *Trusted Integration*, we explained that *Tohono* "made clear that it is the [res judicata] tests in place at the time the predecessor to § 1500 was enacted by which we must be guided." 659 F.3d at 1168 n.4 (citing *Tohono*, 131 S. Ct. at 1730). The res judicata bar to "issues that were or could have been raised" in a prior action, *San Remo Hotel, L.P. v. City & Cnty. of S.F., Cal.*, 545 U.S. 323, 336 n.16 (2005), dates back to the mid-nineteenth century. In *Aurora City v. West*, 74 U.S. 82 (1868), decided the same year as the predecessor to § 1500 was enacted, the Court articulated the res judicata standard as follows:

---

[3]    Section 1500 is "identical in most respects to the original statute." *Tohono*, 131 S. Ct. at 1727.

> [W]here every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem judicatam*, and the former judgment in such a case is conclusive between the parties.  Except in special cases, the plea of *res judicata*, says Taylor, applies *not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation*, and which the parties, exercising reasonable diligence, might have brought forward at the time.

*Id.* at 102 (citing, *inter alia*, 2 John Pitt Taylor, *A Treatise on the Law of Evidence* § 1513 (3d ed. 1858)) (emphasis added); *see also Beloit v. Morgan*, 74 U.S. 619, 622 (1868) (Res judicata "extends not only to the questions of fact and of law, which were decided in the former suit, but also to the grounds of recovery or defence which might have been, but were not, presented.").

Also at the time when the predecessor to § 1500 was enacted, there were two governing tests for determining whether claims were precluded by an earlier litigation: the act or contract test, and the evidence test.  *Trusted Integration*, 659 F.3d at 1169.  Since we conclude that the act or contract test is satisfied here, we need not address the evidence test.  *See id.* at 1170 n.5 ("If two suits are determined to arise from the same claim under either of these res judicata tests, however, application of the bar of § 1500 is likely compelled.").

In *Tohono*, the Supreme Court articulated the nineteenth century "act or contract test" as follows: "The true distinction between demands or rights of action which are single and entire, and those which are several and dis-

tinct, is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts." 131 S. Ct. at 1730 (quoting J.C. Wells, *A Treatise on the Doctrines of Res Adjudicata and Stare Decisis* § 241 (1879)); *see also Trusted Integration*, 659 F.3d at 1169. The nineteenth century act or contract test is narrower than the modern transactional test. *See* Restatement (2d) of Judgments § 24 cmt. a; *Cent. Pines*, 697 F.3d at 1365 (distinguishing background facts that should not be considered in a § 1500 analysis from operative facts that were "critical to plaintiffs' claims in both actions").

Because there are some similarities, however, it can be informative to refer to authorities on the modern transactional test when determining whether claims are based on substantially the same operative facts. *See Trusted Integration*, 659 F.3d at 1168 n.4.[4] Under the transactional test, "[t]he claim extinguished includes all rights of the plaintiff to remedies against the defendant

---

[4]   *See also Beloit*, 74 U.S. at 623 ("A party can no more split up defences than indivisible demands, and present them by piecemeal in successive suits growing out of the same transaction."); *Washington, Alexandria, & Georgetown Steam-Packet Co. v. Sickles*, 65 U.S. 333, 338, 343, 345–46 (1860) (reversing a holding of estoppel where the defendant argued that different counts "represent[ed] distinct and independent transactions"; the Court noted that "transactions have become more complicated and numerous, and law and fact have become more closely interwoven, so as to render their separation more embarrassing"); Wells, § 231, p. 201 ("But the various items must be connected with the same transaction . . . ."); *id.* at § 239, p. 206 ("all the consequences are but the unavoidable result of a single act").

with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation . . . ." Restatement (2d) of Judgments § 24. And, contrary to Resource Investments' argument, the bar to subsequent litigation applies "even though the plaintiff is prepared in the second action . . . [t]o present evidence or grounds or theories of the case not presented in the first action." *Id.* § 25. Different legal theories do not create separate claims for res judicata purposes even though "the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Id.* § 24 cmt. c.

Thus, in *Harbuck v. United States*, 378 F.3d 1324 (Fed. Cir. 2004), we determined that an Equal Employment Act claim in the Claims Court was based on the same operative facts as a district court Title VII sex discrimination claim, thus barring the Claims Court suit under § 1500. *Id.* at 1328. This was so even though the appellant argued "that the two suits involved different claims because the Title VII complaint 'centered on' her non-selection for promotion, and the Equal Employment Act claim 'centered around' her 'assuming the position of a male employee . . . and not receiving the same pay.'" *Id.* at 1329. In affirming the dismissal under § 1500, we held that "[t]he difference between the two theories upon which she relies are but different manifestations of the same underlying claim that the Air Force discriminated against women by paying them less than men." *Id.*

Other circuits have come to similar conclusions. In *Hagee v. City of Evanston*, 729 F.2d 510 (7th Cir. 1984), the Seventh Circuit, in a case similar to this one, held

that res judicata barred a federal suit alleging, *inter alia*, a takings claim due to the revocation of a building permit because of a prior state lawsuit seeking to enjoin the revocation of that same permit. *Id.* at 511, 514. The Seventh Circuit applied the transactional test and found that "[t]he appellants' current suit is for damages allegedly flowing from the very same conduct complained of in the appellants' first suit, Evanston's obstruction of the appellants' construction project." *Id.* at 515.

In *Hayes v. City of Chicago*, 670 F.3d 810 (7th Cir. 2012), a police officer challenged his termination for misconduct in state court. *Id.* at 812. He later filed a Title VII complaint in federal district court. *Id.* at 813. On appeal, the Seventh Circuit applied the transactional test and held that the two suits arose from the same operative facts "because the underlying transaction of both actions [wa]s not only related in time, space, origin, and motivation, but the underlying transaction—Hayes's termination from the Chicago Police Department—[wa]s identical." *Id.* at 814. *See also Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 327 (1st Cir. 2009) ("The fact that a second suit contains some additional factual allegations does not mean it does not arise from the same factual transaction.").

So too in *Trusted Integration*, where both the district court complaint and the Claims Court complaint alleged that the government failed to adequately offer or promote plaintiffs' security compliance product and replaced that product with a government-developed alternative. 659 F.3d at 1161, 1165. In the Claims Court, the plaintiff alleged a breach of an implied agreement. *Id.* at 1165. In the district court, the plaintiff alleged a breach of fiduciary duty. *Id.* Applying the act or contract test, we concluded that both actions were based on the same conduct. *Id.* at 1165, 1169. We "compar[ed] the conduct pleaded" in the two actions, and found that "it [was] apparent that

each count involve[d] nearly identical conduct." *Id.* at 1165. The appellant "was, therefore, alleging that the same conduct gave rise to different claims based upon purportedly distinct legal theories." *Id.*[5]

Applying these principles, it is clear that the operative facts outlined in count IV of the district court action and the Claims Court action are the same, in particular the allegations with respect to the denial of the CWA permit and Resource Investments' economic loss attributable thereto. Thus, the two actions relate to the same underlying transaction and § 1500 bars the Claims Court action here.

## II

Resource Investments additionally argues that even if its permanent takings claim in the Claims Court complaint was barred, its temporary takings claim still survives the § 1500 bar. According to Resource Investments, the denial of the permit was not an operative fact with respect to the temporary takings claim because that claim was based on the delay in the permitting process rather than the ultimate denial of the permit. We need not reach this issue for two reasons.

First, under Supreme Court pleading standards, Resource Investments did not sufficiently allege a temporary takings claim in the original complaint. *See Bell Atl.*

---

[5] We distinguished this circumstance from those—also at issue in *Trusted Integration*—where, despite an overlap of certain background facts, those facts necessary to establish two different causes of action, i.e., the legally operative facts, differ, and the two claims do not merely represent alternative legal theories premised on a single set of facts. 659 F.3d at 1168–70. Those latter circumstances are not at issue here.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quotations and alteration omitted)); *see also ABB Turbo Sys. AG v. TurboUSA, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014). The sole reference to a temporary takings claim in Resource Investments' original Claims Court complaint alleged: "Even in the event the Corps' action is overturned by the federal courts, plaintiffs have suffered a temporary taking of property which requires compensation." J.A. 86. This passing reference is no more than a conclusory assertion of a temporary taking, which fails to satisfy the *Twombly* pleading standard.

Second, we cannot consider the more extensive temporary takings allegations in Resource Investments' amended Claims Court complaint.[6] The relevant comparison focuses on whether count IV of the original district court action arises from substantially the same operative facts as the original Claims Court complaint. The amended Claims Court complaint is irrelevant because of "the longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Keene*, 508 U.S. at 207 (internal quotation marks omitted). As we held in *Central Pines*, "[t]ogether, the plain language of the statute and legislative history leave no doubt that at least a time-of-filing rule applies such that jurisdiction under § 1500 is dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation." 697

---

[6] Contrary to Resource Investments' argument, the Claims Court did not order it to file an amended complaint. *See* J.A. 93.

F.3d at 1367 (internal quotation marks and alteration omitted); *see also Dico, Inc. v. United States*, 48 F.3d 1199, 1203 (Fed. Cir. 1995) ("[T]he § 1500 bar rises, if at all, at the time the [original] complaint is filed in the Court of Federal Claims.").

### III

Finally, Resource Investments argues that § 1500 should be construed to avoid constitutional difficulties which arise because under the Claims Court's § 1500 analysis Resource Investments is precluded from obtaining relief on its constitutional takings claim. *See SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1349 (Fed. Cir. 2009) (relying on "our well established obligation to construe statutes to avoid constitutional difficulties"). But under current Federal Circuit law there is no significant constitutional issue raised by requiring the Claims Court action to be filed before the district court action in order to secure compensation for a takings claim against the government.

In *Tecon Engineers, Inc. v. United States*, 343 F.2d 943 (Ct. Cl. 1965), our predecessor court found that the § 1500 bar operates "*only* when the suit shall have been commenced in the other court *before* the claim was filed in [the Claims Court]." *Id.* at 949. That rule continues to be followed in the Claims Court. *See, e.g.*, *Otoe-Missouria Tribe of Indians, Okla. v. United States*, 105 Fed. Cl. 136, 138–39 (2012); *United Keetoowah Band of Cherokee Indians in Okla. v. United States*, 104 Fed. Cl. 180, 187 (2012); *Nez Perce Tribe v. United States*, 101 Fed. Cl. 139, 142–43 (2011). We are bound by *Tecon*,[7] which "remains

---

[7] In *Tohono*, the Supreme Court expressly declined to overrule *Tecon*, noting that "[t]he *Tecon* holding is not presented in this case because the [Claims Court] action

the law of this circuit." *Brandt*, 710 F.3d at 1379 n.7.  In light of *Tecon*, we see no constitutional problem with the first-to-file rule.  Resource Investments could have sought relief for its takings claim had it filed its Claims Court action before its district court action, and we need not consider what constitutional issues might be presented if *Tecon* were to be overruled.[8]  Similarly, the fact that Resource Investments could have dismissed and refiled its Claims Court action following the Ninth Circuit's decision without facing a limitations problem[9] also eliminates any constitutional concerns.

## IV

Count IV of the earlier-filed district court action and the Claims Court action were based on substantially the same operative facts.  Under these circumstances, the Claims Court correctly dismissed Resource Investments' complaint as barred by § 1500.

## AFFIRMED

---

here was filed after the District Court suit."  131 S. Ct. at 1729–30.

[8]  "The government has argued that *Tecon*'s order-of-filing rule is no longer good law . . . ."  *Ministerio Roca Solida v. United States*, 778 F.3d 1351, 1361 n.4 (Fed. Cir. 2015) (Taranto, J., concurring).

[9]  The six-year statute of limitations on the Claims Court takings claim (28 U.S.C. § 2501) did not bar Resource Investments from dismissing and refiling because the July 27, 1998, Ninth Circuit decision was less than two years following the September 30, 1996, permit denial.