NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LAX ELECTRONICS, INC., DBA AUTOMATIC CONNECTOR,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2020-1498

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-01668-EGB, Senior Judge Eric G. Bruggink.

---

Decided:  November 3, 2020

---

JUSTIN HUFFMAN, Camardo Law Firm, P.C., Auburn, NY, for plaintiff-appellant.

RETA EMMA BEZAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by JEFFREY B. CLARK, DEBORAH ANN BYNUM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before MOORE, O'MALLEY, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

LAX Electronics, Inc., doing business as Automatic Connector (Automatic), has long supplied electronic connectors to federal-government contractors and directly to the government.  According to Automatic, for many years it had parts listed on the Defense Logistics Agency's (DLA) Qualified Parts List (QPL), which designates government-approved sources of supply, and it sold its QPL-listed products to contractors and the government in procurements that required QPL listing of the manufacturer.  In September 2019, DLA removed Automatic from the QPL for certain electronic connectors—specifically, parts MIL-PRF-39012 and MIL-PRF-55339.  Because of the removal, Automatic is barred from responding to solicitations from Department of Defense entities for those parts.

Automatic challenged its removal from the QPL by filing suit in the U.S. Court of Federal Claims (Claims Court), invoking the court's bid-protest jurisdiction under 28 U.S.C. § 1491(b)(1).  Automatic's amended complaint asserted two claims—one for injunctive relief under 5 U.S.C. § 706 for the government's violation of Department of Defense Manual (DoDM) 4120.24 and one for declaratory relief under 28 U.S.C. § 2201 for the government's violation of Federal Acquisition Regulation (FAR) § 9.205(a).  The government moved to dismiss the claims for lack of jurisdiction.

The Claims Court agreed in part.  *LAX Electronics, Inc. v. United States*, No. 19-1668C, 2019 WL 6880939 (Fed. Cl. Dec. 17, 2019).  As to the first claim, the court held that it lacks bid-protest jurisdiction; but rather than dismiss the claim, it transferred the claim to the U.S. District Court for the Eastern District of New York under 28 U.S.C. § 1631. *Id.* at *3–5.  As to the second claim, the Claims Court held that the claim is within the court's bid-protest jurisdiction, but it dismissed the claim for failure to state a claim on

which relief could be granted. *Id.* at *4. We now vacate the court's jurisdictional dismissal of the first claim and remand for further proceedings on that claim, and we affirm the merits dismissal of the second claim.

I

A

In June 2019, DLA audited Automatic's facility. *LAX Electronics*, 2019 WL 6880939, at *1. The resulting audit report identified several violations by Automatic of MIL-STD-790, a standard issued by DLA related to electrical and fiber-optic parts, required Automatic to take corrective actions within 30 days, and noted that the corrections would require DLA acceptance. DLA also sent Automatic a letter on July 2, 2019, ordering Automatic to stop shipment and production of specified connectors because of deficiencies identified in the audit report. Automatic responded to DLA's auditor with its Corrective Action Reports on August 6, 2019. *See LAX Electronics*, 2019 WL 6880939, at *1; J.A. 137–38, 512, 525–45.

Automatic's amended complaint alleges that DLA failed to respond to its Corrective Action Reports or otherwise tell Automatic how to correct the deficiencies identified in the audit report. Rather, on August 13, 2019, the amended complaint says, DLA sent a letter to Automatic directing it to issue a notice to the Government-Industry Data Exchange Program (GIDEP) for the parts discussed in the audit report. Automatic responded to DLA two days later by letter, stating that a GIDEP notice was not required and that Automatic's parts were not deficient. *See LAX Electronics*, 2019 WL 6880939, at *1; J.A. 512–13.

On September 12, 2019, DLA removed Automatic from all QPLs associated with two particular connectors (MIL-PRF-39012 and MIL-PRF-55339) because of repeated violations of applicable specifications and failure to issue a GIDEP notice. DLA also sent a letter to Automatic on

October 9, 2019, informing Automatic of DLA's intent to issue a GIDEP notice to government and industry members about Automatic's noncompliance with and removal from the QPL. *See LAX Electronics*, 2019 WL 6880939, at *1; J.A. 547–48, 550.

Automatic's amended complaint alleges that DLA continues to solicit bids for the parts Automatic cannot supply given the removal from the QPL. "Almost on a continuous basis," the amended complaint states, "DLA is and has been requesting quotes for connectors, and DLA has provided no meaningful opportunity for Automatic to participate in the process through a direct contract or a subcontract with other vendors." J.A. 509–10 ¶ 1. Further: DLA is "barring Automatic from bidding on the continuing stream of solicitations for the connectors" while "refusing to provide Automatic with any sort of reasonable opportunity to arrange for qualification before award of various contracts for the connectors." J.A. 510 ¶ 2. Again: "Because the Government is in a nearly constant need for the parts, DLA is and has been requesting quotes for the connectors on a nearly continuous basis." J.A. 514 ¶ 23. Automatic's amended complaint identifies five solicitations with closing dates from October 28 to November 14, 2019. J.A. 515 ¶ 25; *see also* J.A. 132–34 (declaration, submitted to support a temporary restraining order, enumerating numerous solicitations with closing dates from July through October 2019). The amended complaint declares: "Automatic is a potential bidder for the numerous solicitations for the connectors." J.A. 515 ¶ 26.

B

Automatic sued in the Claims Court on October 28, 2019, invoking the court's bid-protest jurisdiction under 28 U.S.C. § 1491(b)(1). In its complaint and its authorized amended complaint, Automatic made two claims. First, Automatic alleged that DLA removed its parts from the QPL without following the procedures outlined in DoDM

4120.24, Enclosure 14, Sections 11–12. J.A. 515–19. Specifically, Automatic alleged a violation of section 12(b)(1), which requires that the removed product "should again be included on the electronic QPL . . . once the deficiencies noted have been corrected to the government's satisfaction." According to Automatic, DLA's failure to respond to Automatic's Corrective Action Reports deprived Automatic of an opportunity to correct any deficiencies. J.A. 518 ¶¶ 35–36. Second, Automatic alleged that, after the removal from the QPL, DLA failed to comply with FAR § 9.205(a), which states that "when possible, give sufficient time to arrange for qualification before award." 48 C.F.R. § 9.205(a). *See* J.A. 519–20.

The government moved to dismiss for lack of subject-matter jurisdiction under § 1491(b). As relevant here, that provision gives the Claims Court "jurisdiction to render judgment on an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b). The government disputed that Automatic was "an interested party" and also that Automatic was objecting to a statutory or regulatory violation "in connection with a procurement or a proposed procurement." J.A. 503–08.

With respect to Automatic's first claim, alleging a violation of DoDM 4120.24, the Claims Court held that the claim flunks the "in connection with" requirement of § 1491(b). *LAX Electronics*, 2019 WL 6880939, at *2–3. The court likened Automatic's case to *Geiler/Schrudde & Zimmerman v. United States*, stating that "the possibility that an agency action would affect future procurements did not 'establish that the violation "clearly affected" a contract's award or performance.'" *LAX Electronics*, 2019 WL 6880939, at *3 (quoting *Geiler*, 743 F. App'x 974, 977 (Fed. Cir. 2018) (per curiam)). The court also stated that, although Automatic identified specific solicitations that it could not bid on after it was removed from the QPL,

Automatic's removal from the QPL was the result of the audit, which was not performed in connection with any of the identified procurements. *Id.* Determining for that reason that Automatic's first claim did not meet the "in connection with" requirement of § 1491(b)(1), the Claims Court held jurisdiction over that claim absent without addressing the "interested party" requirement of § 1491(b)(1).

As to Automatic's second claim, alleging a violation of FAR § 9.205(a), the Claims Court held that the claim is within the court's bid-protest jurisdiction, determining that this allegation meets both the "interested party" and "in connection with" requirements of § 1491(b)(1). *LAX Electronics*, 2019 WL 6880939, at *3–4, *4 n.2. But the court dismissed the second claim for failing to state a claim. According to the court, § 9.205(a) applies only when an agency decides to impose a "new qualification," not when, as with Automatic, a previously qualified bidder is ousted from the QPL. *LAX Electronics*, 2019 WL 6880939, at *4. Moreover, the court reasoned, Automatic's position conflicts with FAR § 9.202(e), which states that "a contracting officer need not delay a proposed award in order to provide a potential offeror with an opportunity to demonstrate its ability to meet the standards specified for qualification." *Id.* (internal citation marks omitted).

The Claims Court dismissed the second claim for failure to state a claim. The court did not dismiss the first claim, even though it ruled that the claim is outside its jurisdiction. Rather, the court stated that the first claim "appears, on its face, to be subject to review as final agency action" under the Administrative Procedure Act in district court. *Id.* at *5. Upon Automatic's request, the Claims Court transferred the first claim to the Eastern District of New York under 28 U.S.C. § 1631.

The Claims Court entered judgment on December 17, 2019. Automatic timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the ruling on subject-matter jurisdiction de novo. *Resource Conservation Group, LLC v. United States*, 597 F.3d 1238, 1242 (Fed. Cir. 2010). We also review de novo the dismissal for failure to state a claim. *American Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019). To avoid dismissal for failure to state a claim, a plaintiff must allege facts that plausibly suggest entitlement to relief under the law invoked. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). We accept as true the complaint's well-pleaded factual assertions, but we are not required to accept the asserted legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A

The Claims Court held that it lacks subject-matter jurisdiction over Automatic's first claim because Automatic's removal from the QPL was not "in connection with a procurement or proposed procurement" under 28 U.S.C. § 1491(b)(1). We disagree.

We have long recognized that the phrase "in connection with," under § 1491(b)(1), is "very sweeping in scope." *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). Likewise, the term "procurement" is broad enough to cover "any stage of the federal contracting acquisition process, including the process for determining a need for property or services." *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) (internal quotation marks omitted). Any "non-frivolous allegation of a statutory or regulatory violation in connection with a procurement or proposed procurement is sufficient to establish jurisdiction." *Id.* at 1345 n.1.

In its amended complaint, Automatic's first claim alleges that DLA violated procedural requirements in DoDM 4120.24 for removing products from a QPL. The Claims Court held jurisdiction over this claim to be lacking

because, it concluded, this alleged impropriety was not "in connection" with a procurement or proposed procurement. *LAX Electronics*, 2019 WL 6880939, at *3. The court relied chiefly on our non-precedential decision in the *Geiler* case. *Id.* After the Claims Court decided the present case, however, we decided *Acetris Health, LLC v. United States*, 949 F.3d 719 (Fed. Cir. 2020), which makes clear that *Geiler* is narrower than the Claims Court thought and, indeed, that bid-protest jurisdiction extends to Automatic's first claim.

In *Geiler*, upon the death of Mr. Geiler, a veteran, the government revoked the service-disabled veteran-owned small business (SDVOSB) status of certain entities with which Mr. Geiler was involved. As relevant here, those entities challenged the revocation in the Claims Court, asserting constitutional and statutory violations and invoking that court's bid-protest jurisdiction. We affirmed the Claims Court's dismissal of that challenge for lack of jurisdiction on the ground that the plaintiffs "failed to establish that those alleged violations occurred *in connection* with a procurement or proposed procurement." 743 F. App'x at 976–77.

We explained that the plaintiffs had "not point[ed] to any effect that the [government's] status revocation decision had on the award or performance of any contract." *Id.* at 977. We first noted that the revocation violations could not be in connection with the one past contract award that had initially been contested in the litigation, as the contract was awarded pre-revocation and, of the three Geiler entities at issue, two did not bid on that contract and the one that bid did not appeal the Claims Court's ruling that upheld the award on its merits. *Id.* The "in connection with" inquiry, therefore, was limited in the case to potential future procurements. But, relying partly on case law requiring a certain degree of specificity for a plaintiff to meet the "interested party" requirement of § 1491(b)(1), *Geiler*, 743 F. App'x at 977–78, we concluded that the "in

connection with" requirement was not met because the plaintiffs did "not challenge a specific procurement, or even allege that the Geiler Entities were preparing to bid for a specific procurement that required an SDVOSB status," *id.* at 978. We "decline[d] Geiler's invitation to interpret § 1491(b)'s 'in connection with a procurement or a proposed procurement' requirement as satisfied whenever a plaintiff alleges a legal violation that might affect unidentified pending or future procurements." *Id.*

In *Acetris*, we held that the Claims Court had jurisdiction to hear a challenge to the government's "definitive position" that would make the plaintiff ineligible to compete for likely future government procurements for which it was likely to submit bids. *Acetris*, 949 F.3d at 727–28; *see also Boeing Co. v. United States*, 968 F.3d 1371, 1382 n.4 (Fed. Cir. 2020). Acetris was objecting to the government's determinations of how to interpret statutory and regulatory provisions concerning the country of origin of the product and its ingredients and of how that interpretation applied to Acetris, determinations that together excluded Acetris from bidding on a non-speculative stream of future government procurements of the very pharmaceutical products Acetris had previously supplied to the government and wished to continue supplying. *Acetris*, 949 F.3d at 727–28. In concluding that the "in connection with" requirement was met in that circumstance, we explained that *Geiler* was materially different: "This is not a situation where, as in *Geiler*[ ], the bid protester *could not identify any future procurements on which the protester intended to bid.*" *Id.* at 728 (emphasis added).

Automatic has alleged far more in its first claim than the *Geiler* plaintiffs alleged. In fact, Automatic's allegations are akin to what was held sufficient in *Acetris* and therefore call for the same result—that the "in connection with" requirement is met. Automatic's amended complaint is fairly read as alleging that for many years Automatic was selling its parts to DLA and that DLA regularly issued

procurements for these very parts and continued to do so on a regular basis after Automatic's connectors were removed from the QPL. *See* J.A. 509–511, 514–15. These allegations not only go well beyond the entirely generic Geiler assertion that the revocation of SDVOSB status disqualified the Geiler entities from "*all* pending and future proposed procurements set aside" for businesses with that status, with no further specificity. *Geiler*, 743 F. App'x at 977. The amended complaint's allegations in this case are comparable to the facts of *Acetris* and establish a continuing series of future government procurements, since the challenged removal from the QPL, of the specific products Automatic was supplying before that removal and would supply if restored to the QPL. Under *Acetris*, those facts suffice for us to conclude that the violation alleged to have infected the removal from the QPL was "in connection with" those likely procurements.

The government seeks to distinguish this case from *Acetris* on the ground that, in *Acetris*, the protestor challenged a "definitive" legal interpretation and its application to disqualify the protestor, whereas, in this case, Automatic has the ability to requalify for the QPL. Appellee Supp. Br. 4–5. But even aside from whether the distinction is sound on the facts—Acetris itself seemingly could have altered the sourcing of its products' components so as to requalify—the government's distinction does not affect whether the alleged violation is "in connection with" procurements. As in *Acetris*, the government has taken a "definitive position" disqualifying the plaintiff's products from certain sufficiently identified future procurements—here, by removal of Automatic's parts from the QPL. *Acetris*, 949 F.3d at 727. Although the legal violation alleged is different from the violation in *Acetris*, the violation alleged here has the same characteristic that was critical in *Acetris* to finding the "in connection with" requirement met: It resulted in a disqualification from likely future procurements in which the plaintiff was likely to bid.

Because the Claims Court held that Automatic's first claim does not meet the "in connection with" requirement of § 1491(b)(1), it did not decide (for the first claim) whether Automatic meets the "interested party" requirement (though it did decide that issue, favorably to Automatic, for the second claim). We vacate the Claims Court's jurisdictional determination, and we remand for further proceedings on this claim.

B

Automatic's second claim is that DLA violated FAR § 9.205 after removing Automatic's connectors from the QPL. J.A. 519–20. Under FAR § 9.205, "[i]f an agency determines that a qualification requirement is necessary," it must "when possible, give sufficient time to arrange for qualification before award." 48 C.F.R. § 9.205(a). The Claims Court dismissed the claim for failure to state a claim, reasoning that FAR § 9.205(a) applies only when an agency imposes a "new qualification" and noting that FAR § 9.202(e) makes clear that an agency need not "delay" an award to allow a potential bidder the opportunity to qualify. *LAX Electronics*, 2019 WL 6880939, at *4.

We affirm the dismissal without endorsing the Claims Court's conclusion that § 9.205(a) is limited to a "new qualification." Neither the Claims Court's opinion nor the government's brief on appeal presents an analysis of precisely what that limitation means, how it applies to QPL listing or delisting, and how it fits with the overall regulatory scheme of which § 9.205(a) is a part. We conclude, instead, that the action challenged by Automatic is not a denial of what Automatic itself says § 9.205(a) requires of the agency. The action challenged in this claim is DLA's failure to respond to Automatic's Corrective Action Reports, not a denial of time to qualify before any particular contract award is made. J.A. 520 ¶¶ 47–50. But the regulatory subsection, in Automatic's own view, merely "requir[es] the Government to give the contractor sufficient

time to arrange for qualification before award." Appellant Opening Br. 20. Automatic's complaint about DLA's alleged refusal to engage Automatic on the merits of the Corrective Action Reports does not allege denial of sufficient time to qualify; indeed, Automatic states that "because the Government refuses to even tell Automatic what is allegedly deficient about its [Corrective Action Reports], any effort by Automatic to qualify or re-qualify for the QPL would be futile." Appellant Reply Br. 8. Because the facts alleged by Automatic do not plausibly suggest a showing of entitlement to relief based on a violation of § 9.205(a), we affirm the dismissal of Automatic's second claim.

## III

The judgment of the Claims Court is affirmed in part and vacated in part, and the matter is remanded to the court for further proceedings.

The parties will bear their own costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**